UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

A.C.R. et al.,

                Plaintiffs,             **MEMORANDUM & ORDER**
                                           25-CV-3962 (EK)(TAM)

        -against-

KRISTI NOEM, Secretary, U.S.
Department of Homeland Security; et
al.,

                Defendants.

------------------------------------x
ERIC KOMITEE, United States District Judge:

      In June 2025, U.S. Citizenship and Immigration
Services rescinded a deferred-action program for young persons
with Special Immigrant Juvenile Status (known as "SIJS-DA").
The named plaintiffs in this case contend that the rescission
violated the Administrative Procedure Act because, among other
things, (1) the action was arbitrary and capricious; (2) certain
aspects of the rescission amounted to legislative rulemaking and
were therefore subject to the APA's notice-and-comment
requirement; and (3) USCIS violated the *Accardi* doctrine by
failing to follow its own procedures from April to June 2025.

      Plaintiffs seek an immediate stay, and eventual
vacatur, of the SIJS-DA rescission, as well as certain
injunctive relief.  Plaintiffs also seek certification of two

classes, each with its own subclass, under the Federal Rules of Civil Procedure.

For the following reasons, Plaintiffs' motion for a stay of the SIJS-DA rescission is granted.  The Court also grants some — but not all — of the injunctive relief sought by the individual named plaintiffs.  All other preliminary injunctive relief is denied.  The Court reserves judgment on the motion for class certification.

## I.   Background

The Court draws the following facts from the complaint, the agency documents appended thereto, and the parties' supplemental declarations.  *See We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 276 n.3 (2d Cir. 2021) (court may consider declarations at preliminary-injunction stage); *Richardson v. N.Y.C. Bd. of Educ.*, 711 F. App'x 11, 14 (2d Cir. 2017) (court may judicially notice documents "promulgated by or binding on a government agency, and not subject to reasonable dispute").[1]  All facts discussed herein are undisputed unless otherwise noted.  *See Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998) (party seeking preliminary injunction "is not entitled to have the court accept its untested representations as true if they are disputed").

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

## A.   SIJS Classification

Congress created the SIJS classification in 1990.  The classification provides "immigration relief for foreign-born children living in the United States who have been abused, neglected, abandoned, or similarly mistreated by a parent" and for whom a state or administrative court has determined it would not be in their best interest to be returned to their home country or prior country of residence.  Compl. ¶ 34; *see* 8 U.S.C. § 1101(a)(27)(J).

To qualify for SIJS, a noncitizen must be (1) under 21, (2) unmarried, and (3) present in the United States. 8 C.F.R. § 204.11(b).  A state court must also declare the petitioner a ward of the court or commit the petitioner to the custody of "an agency or department of a State, or an individual or entity appointed by a State or juvenile court."  *Id.* § 204.11(c); *see also* 8 U.S.C. § 1101(a)(27)(J).  The state-court order must be predicated on two findings: (1) that the petitioner cannot return to his home country because of familial abuse, neglect, or abandonment; and (2) that it would not be in the petitioner's best interest to return to his or her home country or prior country of residence.  8 C.F.R. § 204.11(c). The petitioner must send this state-court order to USCIS as part of his or her petition for SIJS.  Compl. ¶ 40.

**B.    SIJS Eligibility for Adjustment of Status**

The Immigration and Nationality Act (as subsequently amended) renders SIJS recipients eligible for lawful permanent resident status.  8 U.S.C. § 1153(b)(4).  But they can only apply for adjustment of status if an immigrant visa is "immediately available" at the time of filing.  *Id.* § 1255(a). The relevant visa here is the employment-based fourth preference special immigrant category visa ("EB-4 visa").  *Id.* § 1153(b)(4).  So, if no EB-4 visa is available when a person receives SIJS approval, that person cannot (yet) apply for adjustment of status.

**C.    2022 Policy Alert**

In December 2022, the State Department declared a global backlog in EB-4 visas.  Compl. ¶ 51.  As of March 2025, Plaintiffs estimate that more than 150,000 SIJS recipients are currently in this backlog.  *Id.* ¶ 52.  That means more than 150,000 individuals have received SIJS classification but cannot apply for adjustment of status.

In response to the backlog, USCIS announced a deferred-action program for individuals with SIJS.  *Id.* ¶ 59. Deferred action is "an act of administrative convenience to the government that gives some cases lower priority."  8 C.F.R. § 274a.12(c)(14); *see also* 8 C.F.R. § 236.21(c)(1) (defining deferred action as "a form of enforcement discretion not to

pursue the removal of certain aliens for a limited period in the interest of ordering enforcement priorities in light of limitations on available resources, taking into account humanitarian considerations and administrative convenience"). Receiving deferred action would also allow SIJS beneficiaries to apply for employment authorization. *See* 2022 Policy Alert 3, ECF No. 1-1.

USCIS justified the SIJS-DA policy on several grounds. Specifically, the agency found that:

- The policy "further[ed] congressional intent to provide humanitarian protection" for SIJS recipients, because Congress "likely did not envision that [SIJS] petitioners would have to wait years before a visa became available" and thereby be left "in limbo." *Id.* at 2.[2]

- The policy would "conserve[] DHS resources by focusing on the enforcement of higher priority cases, such as noncitizens who pose a threat to national security, public safety, and border security." *Id.* at 4. This was because, in the agency's view, SIJS recipients were "unlikely to be enforcement priorities." *Id.* at 3.

- The policy would "provide[] significant benefits to the U.S. labor pool and the economy in general," outweighing any additional costs imposed on the states for "schools, services, or driver's licenses." *Id.* at 4.

- The policy would vindicate the reliance interests of SIJS recipients, who had expected to remain in the United States and be able to

---

[2] Page numbers in citations to record documents other than briefs refer to ECF pagination.

5

apply for employment authorization after SIJS
approval. *Id.*

**D.    SIJS-DA Program**

Under the SIJS-DA program, USCIS automatically
considered whether an SIJS petitioner should receive deferred
action.  2022 Policy Alert 3.  SIJS-DA did not guarantee that an
applicant would *receive* deferred action but rather that they
would be considered for it.  Under SIJS-DA, USCIS hearing
officers would grant deferred action if the "totality of the
facts and circumstances" supported doing so.  Compl. ¶ 66; *see
also* 2024 USCIS Policy Manual 5, ECF No. 9-26 (hereinafter "2024
Policy Manual").  One "strong positive" factor in favor of
approval was whether the applicant had received a court order
declaring him eligible for the SIJS program.  Compl. ¶ 66; *see
also* 2024 Policy Manual 5.  In other words, SIJS created a
presumption in favor of deferred action.

Hearing officers "could" also conduct background
checks including a request for biometric information and / or
in-person interviews.  Compl. ¶ 67.  But USCIS determined in a
July 2025 report that "[o]nly 28% of approved SIJ petitioners
had a biometrics collection by USCIS."[3]

---

[3] *See* USCIS, Criminality, Gangs, and Program Integrity Concerns in
Special Immigrant Juvenile Petitions 18 (2025),
https://www.uscis.gov/sites/default/files/document/reports/DO_SIJ_Report.pdf.

A successful applicant would benefit from deferred action for four years and could apply for renewal within 150 days of expiration. *Id.* ¶ 69. SIJS-DA recipients could also apply for work authorization pursuant to 8 C.F.R. § 274a.12(c)(14), which permits any deferred action recipient to apply for a work permit upon a showing of "economic necessity." Given the age of SIJS recipients, economic necessity would be presumed. Compl. ¶ 68.

Plaintiffs estimate, based on public data, that approximately 200,000 people ultimately received deferred action under SIJS-DA. Compl. ¶¶ 71-72.

**E.    USCIS's *Sub Silentio* Rescission of SIJS-DA**

Prior to April 2025, the vast majority of SIJS approvals came with a grant of deferred action. *See, e.g.*, Wilkes Aff. ¶¶ 6-7, ECF No. 9-23 (immigration attorney observing a grant rate of 100% as to her clients). Starting in April 2025, however, USCIS began issuing SIJS approvals *without* corresponding deferred-action approvals. Compl. ¶ 74. Unlike the pre-April 2025 notices, "close to zero" post-April SIJS approval notices concurrently granted deferred action. *Id.*; *see, e.g.*, Wilkes Aff. ¶¶ 11-12 (SIJS approvals for clients of New Mexico Immigrant Law Center did not mention deferred action after April 2025); McGrorty Aff. ¶¶ 9-11, ECF No. 9-19 (same for clients of Catholic Charities Legal Services in Miami). The

government has not disputed that, between April and June 2025, it did not consider SIJS recipients for deferred action.

Despite this shift, USCIS announced no official change in its policies or procedures until June 2025.

**F.   2025 Policy Alert**

On June 6, 2025, USCIS publicly issued a new policy statement that rescinded SIJS-DA.  Compl. ¶ 81; Compl. Ex. B ("2025 Policy Alert").  The 2025 Policy Alert said USCIS was "eliminat[ing] automatic consideration of deferred action (and related employment authorization)" for SIJS beneficiaries who could not apply for adjustment of status because a visa was not available.  2025 Policy Alert 2.  More generally, USCIS would no longer "conduct deferred action determinations for [SIJS beneficiaries] who cannot apply for adjustment of status solely because an immigrant visa is not immediately available."  *Id.* at 3.  Nor would it accept employment authorization requests from SIJS-DA recipients.  *Id.*  SIJS beneficiaries with existing deferred action or employment authorization could retain those benefits until they expired but would not be permitted to renew them.  *Id.*

On the same day that it released the 2025 Policy Alert, USCIS circulated an internal memo to its chief counsel and the associate directors of Field Operations and Fraud Detection and National Security.  USCIS Internal Memorandum

dated June 6, 2025, ECF No. 42-5 ("USCIS Internal Memo").  Taken

together, the USCIS Internal Memo and the 2025 Policy Alert

offered four reasons for rescinding the SIJS-DA policy:

- Congress "did not expressly permit" the
  program, which was not "supported by any
  existing statute or regulation."  2025 Policy
  Alert 2.

- Rescinding the policy would permit hearing
  officers to consider all "potentially relevant
  information" about SIJS applicants[4] and would
  thereby align agency priorities with Executive
  Order 14161, which broadly requires strict
  vetting for noncitizens entering the country.
  *Id.* at 2-3 & n.4.

- "SIJS classification [had] been exploited by
  dangerous criminal aliens, including members of
  gangs and transnational criminal
  organizations."  USCIS Internal Memo 6.

- The policy caused "program integrity issues" by
  triggering an increase in SIJS petitions.  *Id.*
  at 7.

Neither the 2025 Policy Alert nor the USCIS Internal Memo made

any mention of potential reliance interests or alternatives to

rescinding SIJS-DA outright.

## G.    The Instant Action

Plaintiffs are nine SIJS recipients (the "Individual

Plaintiffs") and two organizations that provide legal services

to immigrant youth (the "Organizational Plaintiffs").  They

filed the instant action on July 17, 2025.  Plaintiffs seek

---

[4] This would include biometric information, which was not required under
the 2022 Policy Alert.  USCIS Internal Memo 2.

certification of the following injunctive classes and subclasses

under Federal Rule of Civil Procedure 23(b)(2).  Compl. ¶ 113.

- **Deferred Action Class:** All individuals whose SIJS petitions were or will be approved on or after April 7, 2025, and who will no longer be considered for deferred action based on SIJS because of Defendants' 2025 Rescission Policy.

  - ***Accardi* Subclass:**[5] All individuals whose SIJS petitions were approved on or after April 7, 2025, and on or before June 5, 2025, and who were not considered for SIJS-DA because of Defendants' *sub silentio* rescission of the 2022 Policy.

- **Renewal Class:** All individuals who were previously granted deferred action based on SIJS but who are no longer eligible to renew their deferred action.

  - **EAD Subclass:**  All members of the Renewal Class who have applied for or are eligible to apply for an Employment Authorization Document under 8 C.F.R. § 274a.12(c)(14) ("(c)(14) EAD"), but whose applications for a (c)(14) EAD have not been or will not be adjudicated pursuant to the Defendants' June 6, 2025 Policy Alert.

Plaintiffs seek three broad categories of relief.

***First***, they seek a stay of the SIJS-DA rescission under Section

705 of the Administrative Procedure Act ("APA"), and eventual

vacatur under Section 706.[6]  ***Second***, they seek a preliminary (and

ultimately permanent) injunction requiring USCIS to:

---

[5] This class does not appear in the original complaint, but Plaintiffs later proposed it in their reply brief.  Pls.' Reply in Supp. of Class Cert. 8, ECF No. 45.  The government has not objected to this approach.

[6] The complaint also requests that the Court "declare" the SIJS-DA rescission arbitrary and capricious.  Compl. 49-50.  But Plaintiffs have

- conduct deferred-action determinations for all
  members of the Deferred Action Class within
  ninety days and furnish the grounds for any
  denial within fourteen days of adjudication;

- conduct deferred-action determinations for
  A.C.R., J.G.V., E.A.R., and C.V.R. within thirty
  days and furnish the grounds for any denial
  within ten days of adjudication;

- resume "timely" employment-authorization
  determinations for members of the EAD Sub-Class
  within thirty days;

- conduct an employment-authorization determination
  for L.M.R. within thirty days;[7]

- reinstitute a "clear renewal process for SIJS
  deferred action and associated work
  authorization"; and

- refrain from any "retaliatory action" against the
  Individual Plaintiffs.

**Third**, they seek an order under the All Writs Act barring the

government from removing the Individual Plaintiffs from the

continental United States during the pendency of this

litigation.

## II.  Motion for a Preliminary Injunction

A plaintiff seeking a preliminary injunction must

establish (1) a likelihood of success on the merits; (2) a

---

since made clear that they are not seeking "preliminary declaratory relief."
Pls.' Reply Br. in Supp. of Prelim. Injunction ("Pls.' PI Reply") 3 n.4, ECF
No. 44.
  [7] Plaintiffs initially sought a similar determination for S.M.M. but
later notified the Court that the government had granted S.M.M.'s application
for work authorization while the instant motion was pending.  ECF No. 59.
Plaintiffs therefore concede that their request for expedited adjudication of
S.M.M.'s work-authorization application is moot.  *Id.*

likelihood of irreparable harm absent relief; (3) that the
balance of equities supports an injunction; and (4) that the
public interest favors an injunction.  *Winter v. Nat. Res. Def.
Council, Inc.*, 555 U.S. 7, 20 (2008).  When the government is a
party to a lawsuit, the final two factors merge.  *New York v.
U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 58-59 (2d Cir. 2020).

 The same standard applies to a motion to stay under
Section 705 of the APA.  *Nat Res. Def. Council v. U.S. Dep't of
Energy*, 362 F. Supp. 3d 126, 149 (S.D.N.Y. 2019); *accord E. Air
Lines, Inc. v. Civ. Aeronautics Bd.*, 261 F.2d 830, 830 (2d Cir.
1958) (per curiam).  Before applying this standard, however, the
Court must first assess its subject-matter jurisdiction.

## A. The Court Has Subject-Matter Jurisdiction

 The government argues that the Court lacks subject-
matter jurisdiction because (1) Plaintiffs lack standing;
(2) the SIJS-DA rescission is unreviewable under Section
701(a)(2) of the APA;[8] (3) review is barred under Section 1252(g)
of the Immigration and Nationality Act ("INA"); and (4) review
is barred under Section 1252(f) of the INA.  The Court disagrees
as to all but Section 1252(f), which bars certain of Plaintiffs'
requested relief.

---

[8] *See, e.g.*, *Balt. Gas & Elec. Co. v. FERC*, 252 F.3d 456, 458 (D.C. Cir.
2001) ("The ban on judicial review of actions committed to agency discretion
by law is jurisdictional.").

1.    The Individual Plaintiffs Have Standing

The "irreducible constitutional minimum of standing contains three elements": (1) injury in fact; (2) causation; and (3) redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing at the preliminary-injunction stage, a plaintiff "cannot rest on mere allegations, but must set forth by affidavit or other evidence specific facts that establish the three familiar elements of standing." *New York*, 969 F.3d at 59.

The government argues that the Individual Plaintiffs have not established any of the three prerequisites for standing.[9] As to injury in fact, the government argues that the Individual Plaintiffs have no "legally protected interest in *obtaining*" deferred action or employment authorization and have "fail[ed] to show that their removal or detention are imminent." Gov't Br. in Opp'n to Prelim. Injunction 12-14 ("Gov't PI Opp'n"), ECF No. 42 (emphasis added). As to causation, the government argues that the Individual Plaintiffs' eventual removal or unemployment stems from their unlawful presence in the United States, rather than from their lack of deferred action or employment authorization. *Id.* at 14-15. Finally, as to redressability, the government argues that even if the SIJS-

---

[9] We defer ruling on whether the Organizational Plaintiffs have standing, as it has no bearing on the relief ordered herein.

DA program were reinstated, the Individual Plaintiffs would still be at risk of removal because deferred action "remains a discretionary decision."  *Id.* at 15.

These arguments miss the mark.  First, the government mischaracterizes the Individual Plaintiffs' alleged injury.  The Individual Plaintiffs argue that the SIJS-DA rescission has deprived them of the *opportunity to pursue* deferred action and / or work authorization, not that it has deprived them of those benefits themselves.  The loss of opportunity to pursue an immigration benefit is a cognizable injury in fact, even when the government retains ultimate discretion to deny that benefit.  *See Mantena v. Johnson*, 809 F.3d 721, 731 (2d Cir. 2015) (loss of opportunity to pursue green card was injury in fact, even if plaintiff did not ultimately receive one); *Patel v. U.S. Citizenship & Immigr. Servs.*, 732 F.3d 633, 638 (6th Cir. 2013) (loss of opportunity to pursue immigrant visa was injury in fact).[10]

Here, under the plain terms of the 2025 Policy Alert, USCIS will not consider SIJS recipients for deferred action, or at least will not consider SIJS recipients for deferred action

---

[10] *Cf. Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639, 658 (2008) (lost opportunity to obtain valuable liens was injury for purposes of RICO standing); *N.E. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) ("[I]n the context of a challenge to a set-aside program, the 'injury in fact' is the inability to compete on an equal footing in the bidding process, not the loss of a contract.").

based solely on their SIJS.  Nor will USCIS consider SIJS
recipients for employment authorization.  *See* 2025 Policy Alert
3.  To the extent those refusals are traceable to a violation of
the Administrative Procedure Act, the Individual Plaintiffs will
have established a loss-of-opportunity injury.  *Mantena*, 809
F.3d at 731.

The government is also incorrect to suggest that the
Individual Plaintiffs cannot rely on heightened fear of
deportation or removal to establish injury-in-fact.  To be sure,
a threatened injury may not be "conjectural" or "hypothetical"
Gov't PI Opp'n 12 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330,
339 (2016), as revised (May 24, 2016)).  "This does not mean,
however, that the risk of real harm cannot satisfy the
requirement of concreteness."  *Spokeo*, 578 U.S. at 341.

In this case, the risk of harm is real, and it does
not depend on a "chain of contingencies."  *Clapper v. Amnesty
Int'l USA*, 568 U.S. 398, 410 (2013).  The Individual Plaintiffs
have no legal status and are therefore removable.  And USCIS
indicated candidly that it rescinded SIJS-DA in part so that it
could remove more SIJS recipients without lawful status.  *See*
USCIS Internal Memo 8 (indicating one reason for rescission was
to comply with an Executive Order mandating that DHS "promptly
take all appropriate action, consistent with law, to rescind the
policy decisions of the previous administration that led to the

increased or continued presence of illegal aliens in the United States"). Because they face an increased and imminent risk of removal, the Individual Plaintiffs have alleged an injury in fact.

The Individual Plaintiffs' lost opportunities to pursue deferred action and work authorization plainly flow from the 2025 Policy Alert, as do their heightened risk of deportation and removal. And these injuries would clearly be redressed by a decision vacating the SIJS-DA rescission. *See, e.g.*, *Mantena*, 809 F.3d at 731 (effectively collapsing the injury-in-fact and redressability inquiries where the alleged injury was the lost opportunity to pursue a green card).

2. <u>The APA Does Not Bar Review</u>

The APA establishes a "basic presumption of judicial review for one suffering legal wrong because of agency action." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16-17 (2020) (hereinafter "*Regents*"). There are, however, exceptions to this rule. As relevant here, a court may not review agency action that is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). This principle implicates deferred action, as the "decision not to prosecute or enforce" a statutory or regulatory violation is one that is "generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985).

The government argues that the SIJS-DA policy is simply a nonenforcement policy under *Chaney*.  Gov't PI Opp'n 19. On this view, the Biden Administration simply abstained from enforcing the immigration laws against a particular subset of aliens (*i.e.*, SIJS recipients).  And because that abstention was an unreviewable exercise of prosecutorial discretion, it follows (according to the government) that the current administration's more vigorous enforcement approach is equally unreviewable.

*Regents* forecloses this argument.  That case involved the Deferred Action for Childhood Arrivals ("DACA") program, which granted deferred action to certain noncitizens who arrived in the United States as children.  591 U.S. at 9.  To be eligible for DACA relief, a noncitizen had to meet certain criteria, such as continuously residing in the United States since 2007.  *Id.* at 10.  As part of the program, USCIS "instituted a standardized review process" and "sent formal notices indicating whether the alien would receive the two-year forbearance" that DACA offered.  *Id.* at 18.  Deferred action also rendered recipients able to "request work authorization" and "eligible for Social Security and Medicare."  *Id.* at 18-19. In other words, the agency in *Regents* did not simply "refuse to institute proceedings" against a class of noncitizens.  *Id.* Instead, it constructed an adjudicatory process that could end in an "affirmative act of approval" — "the very opposite of a

refusal to act."  *Id.* at 18 ("These proceedings are effectively adjudications.").

The same logic applies here.  USCIS solicited petitions for SIJS, which it also treated as applications for deferred action.  The applicants had to meet enumerated criteria, as discussed above and below.  8 C.F.R. § 204.11(b). USCIS then established a standardized process for reviewing those applications, which would — if successful — result in deferred action for a defined period and the ability to seek work authorization.  2022 Policy Alert 2-3.  Thus, much like DACA, SIJS-DA was "more than a non-enforcement policy" – it was a "program for conferring affirmative immigration relief." *Regents*, 591 U.S. at 18-19.

The government's effort to distinguish *Regents* is unpersuasive.  First, the government argues that "no such enumerated criteria were required to qualify for [deferred action]" under SIJS-DA.  Gov't PI Opp'n 20.  This is incorrect. SIJS-DA applicants *did* have to meet certain enumerated criteria, such as being under twenty-one and obtaining a state-court order committing them to the guardianship of a public or private entity.  8 C.F.R. § 204.11(b)-(c).  Second, the government argues that DACA *automatically* conferred additional benefits (such as work authorization) that SIJS-DA did not.  It is not clear why this distinction is legally relevant.  Even if SIJS-DA

did not provide automatic work authorization, it was nevertheless a "program for conferring affirmative immigration relief," namely, deferred action. *See Regents*, 591 U.S. at 18. In any event, DACA recipients, like SIJS-DA recipients, must apply for work authorization. 8 C.F.R. § 274a.12(c)(33); *see also Regents*, 591 U.S. at 18 (DACA recipients "*may* request work authorization" (emphasis added)).

*Regents* controls. The APA does not bar review.

3. <u>Section 1252(g) of the INA Does Not Bar Review</u>

Next, the government argues that the Court lacks subject-matter jurisdiction due to the operation of 8 U.S.C. § 1252(g). That provision states in relevant part:

> [N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

Under *Regents*, Section 1252(g) plainly does not apply. The Court held there that the revocation of a "deferred action program with associated benefits[] is not a decision to commence proceedings, much less to adjudicate a case or execute a removal order." *Regents*, 591 U.S. at 19. The government does not cite *Regents* in the section of its brief discussing Section 1252(g), let alone attempt to distinguish it, and we see no basis for that distinction.

4.    Section 1252(f) of the INA Does Bar Some of the
      Relief Sought

       Finally, the government argues that the Court lacks

jurisdiction to issue a preliminary injunction granting class-

wide relief under Section 1252(f) of the INA.  That provision

states, in relevant part:

    Regardless of the nature of the action or claim or of
    the identity of the party or parties bringing the
    action, no court (other than the Supreme Court) shall
    have jurisdiction or authority to enjoin or restrain
    the operation of the provisions of part IV of this
    subchapter . . . other than with respect to the
    application of such provisions to an individual alien
    against whom proceedings under such part have been
    initiated.

8 U.S.C. § 1252(f)(1).

       Section 1252(f)(1) "prohibits lower courts from

entering [class-wide] injunctions that order federal officials

to take or to refrain from taking actions to enforce, implement,

or otherwise carry out" the statutory provisions in Part IV of

the relevant subchapter.  *Garland v. Aleman Gonzalez*, 596 U.S.

543, 550 (2022).  Those INA provisions — found at 8 U.S.C.

§§ 1221-1231 — govern the "inspection, apprehension,

examination, and removal of aliens."  *Id.* at 549-50.  In the

government's view, Plaintiffs' requested relief runs afoul of

Section 1252(f), because it would "interfere with the

Government's efforts to arrest, detain, and remove [SIJS

recipients] under its current priorities."  Gov't PI Opp'n 9.

a.   Section 1252(f) Does Not Bar a Stay and
        Eventual Vacatur Under the APA

   A stay and eventual vacatur of the SIJS-DA rescission
would not run afoul of Section 1252(f).  That provision only
applies to injunctive relief, *Aleman Gonzalez*, 596 U.S. at 550,
and an injunction is different from vacatur.  *See Monsanto Co.
v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010) (describing
an injunction as a "drastic and extraordinary remedy" compared
to the "less drastic" remedy of partial or complete vacatur).
Accordingly, lower courts have consistently held that Section
1252(f) does not apply to actions brought under Sections 705 and
706 of the APA.  *See, e.g.*, *Texas v. United States*, 40 F.4th
205, 219-20 (5th Cir. 2022) (per curiam); *Coal. for Humane
Immigrant Rts. v. Noem*, --- F. Supp. 3d ---, 2025 WL 2192986, at
*13 & n.16 (D.D.C. Aug. 1, 2025) (collecting cases); *Refugee &
Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, --- F. Supp. 3d
---, 2025 WL 1825431, at *19 (D.D.C. July 2, 2025); *Haitian
Evangelical Clergy Ass'n v. Trump*, 789 F. Supp. 3d 255, 271-72
(E.D.N.Y. 2025).

   b.   Section 1252(f) Bars Much of the Injunctive
        Relief Sought

   The remaining question is whether Plaintiffs'
additional requested injunctive relief would violate Section
1252(f).  Much — though not all — of the requested relief is
superfluous given the Court's decision (below) to stay the SIJS-

DA rescission under APA Section 705, or is otherwise inappropriate. And the Supreme Court has cautioned against granting injunctions that would have no "meaningful practical effect independent of . . . vacatur." *Monsanto*, 561 U.S. at 165. But even if the Court was not denying the requested relief for other reasons, Section 1252(f) would bar the issuance of an injunction requiring USCIS to conduct new deferred-action determinations, except as to E.A.R. and C.V.R., and would likewise bar an injunction requiring USCIS to reinstate a process for SIJS-DA renewal.[11]

Here, like in *Aleman Gonzalez*, Plaintiffs seek an injunction that would "interfere with . . . efforts" that "in the Government's view" are necessary to effectuate its inspection, apprehension, examination, and removal powers. 596 U.S. at 549-51. The plaintiffs in *Aleman Gonzalez* were detained pending removal pursuant to 8 U.S.C. § 1231(a)(6) and sought an injunction preventing their continued detention for more than six months without a bond hearing, which the district court granted. *Id.* at 546-47. The Supreme Court held that requiring bond hearings when — in the government's view — Section 1231(a)(6) allowed officials to continue detaining plaintiffs

_____

[11] The government does not argue, nor does the Court conclude, that Section 1252(f) bars an injunction requiring DHS to resume making "timely" employment-authorization determinations for SIJS-DA recipients. But that relief is denied for other reasons, discussed below.

without them, ran afoul of Section 1252(f).  *Id.* at 551.  In
other words, mandating consideration of bail interfered with the
government's power of detention.  So too, mandating
consideration of deferred action interferes with the
government's power of removal.

Plaintiffs' attempts to distinguish *Aleman Gonzalez*
are unavailing.  They argue that Section 1252(f) is inapplicable
because none of the covered provisions of the INA discuss
deferred action.  Pls.' PI Reply 3.  That argument
misunderstands the relevant inquiry.  The question is whether
requiring the government to consider (or reconsider) SIJS
petitioners for deferred action — and to do so within a certain
timeframe, as Plaintiffs have requested — constrains its ability
to act under INA provisions that *are* covered by Section 1252(f),
*i.e.*, those provisions related to "inspection, apprehension,
examination, and removal of aliens."  *Aleman Gonzalez*, 596 U.S.
at 549-50.  And requiring USCIS to consider certain removable
aliens[12] for deferred action clearly has more than a "collateral
effect," Pls.' PI Reply 4, on the ability to remove those
aliens.

Section 1252(f) bars the issuance of an injunction
requiring USCIS to conduct new deferred-action determinations

---

[12] *See* 2022 Policy Alert 1 ("SIJ classification . . . does not confer
lawful status"); 2025 Policy Alert 1 (same).

for members of the Deferred Action Class and reinstate a process for SIJS-DA renewal.  However, it does not bar injunctive relief as to E.A.R. and C.V.R., against whom the government has initiated removal proceedings.  *See* 8 U.S.C. § 1252(f)(1) (exempting injunctive relief as "to an individual alien against whom proceedings . . . have been initiated"); Compl. ¶¶ 97-98.

**B.    Plaintiffs Are Likely to Succeed on the Merits**

Moving to the merits, Plaintiffs' claims boil down to three arguments.  They argue that (1) the government failed to adequately consider and explain the SIJS-DA rescission; (2) certain elements of the SIJS-DA rescission violated the APA's notice-and-comment requirement; and (3) USCIS impermissibly departed from SIJS-DA before formally changing agency policy, thereby violating the *Accardi* doctrine.  Plaintiffs are likely to prevail, at least in part, on each front.

1.    The SIJS-DA Rescission Was Likely Arbitrary and Capricious Under the APA

A court shall "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706.  An agency action is arbitrary and capricious if the agency does not articulate a "rational connection between the facts found and the choice made."  *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016).

When, as here, an agency breaks from a prior policy, it need not offer "reasons for the new policy [that] are *better* than the reasons for the old one." *Food & Drug Admin. v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 570 (2025). It must, however, show "awareness that it is changing position," offer "good reasons for the new policy," and explain the justifications for "disregarding facts and circumstances that underlay or were engendered by the prior policy." *Encino*, 579 U.S. at 221-22.[13] This also means the agency must consider "serious reliance interests" generated by the prior policy. *White Lion*, 604 U.S. at 570; *Regents*, 591 U.S. at 30.

a. USCIS Offered a Reasonable Explanation for Its Decision to Rescind SIJS-DA

To assess USCIS's explanation for rescinding SIJS-DA, we look at the reasons it provided in two sources. One of these, the 2025 Policy Alert, was publicly disseminated; the other, the USCIS Internal Memo, was not. Judicial review of an agency's decision "is to be based on the *full* administrative record that was before the [agency] at the time [of its]

---

[13] The Supreme Court has left open whether the change-in-position doctrine applies to agency decision-making that occurs outside the notice-and-comment process. *White Lion*, 604 U.S. at 570 n.5. Here, however, the parties agree that it does. *See* Pls.' Suppl. Br. 13, ECF No. 57; Gov't Suppl. Br. 8, ECF No. 56. The Court will therefore apply the doctrine. The fact that *Regents* applied the change-in-position doctrine to a policy statement much like the one at issue here buttresses the Court's approach. *Regents*, 591 U.S. at 30; *see also White Lion*, 604 U.S. at 570 n.5 (arguing it was appropriate to apply the change of position doctrine in *Regents* because "the policy statement instituted a standardized review process that effectively resembled adjudication").

decision." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401
U.S. 402, 420 (1971) (emphasis added).  Courts must not consider
"*post hoc* rationalizations," *Regents*, 591 U.S. at 23, but the
USCIS Internal Memo is not one: it was issued contemporaneously
with the 2025 Policy Alert.  Plaintiffs marshal several
authorities in support of their argument that courts should
ignore internal explanations because they do not serve the APA's
purposes of transparency and public accountability.  Pls.'
Suppl. Br. 15-16.  But absent a clear rule to the contrary, the
Court deems it appropriate to consider all contemporary evidence
of USCIS's reasoning, particularly given that the USCIS Internal
Memo expounds on the reasons provided in the (public) 2025
Policy Alert.

   One of USCIS's principal reasons for rescinding SIJS-
DA was that the program was not "supported by any existing
statute or regulation."  2025 Policy Alert 2.  The Internal
USCIS Memo elaborates: "[t]he INA simply does not contain a
provision to permit" SIJS-DA.  Internal USCIS Memo 7.  Put
succinctly, USCIS stated its belief that SIJS-DA exceeded its
authority.  That is, in itself, a good reason for rescinding the
policy.[14]  *See Regents*, 591 U.S. at 40 (Thomas, J., concurring in
the judgment and dissenting in part) ("The decision to

---

[14] If there were evidence that the agency's explanation was pretextual,
that might be different.  *See Dep't of Com. v. New York*, 588 U.S. 752, 785
(2019).  But Plaintiffs have not pointed to any such evidence.

countermand an unlawful agency action is clearly reasonable."); *Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 108 (2d Cir. 2018) ("It is well settled that an agency may only act within the authority granted to it by statute."); *see generally La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986) (stating the oft-quoted refrain that "an agency literally has no power to act . . . unless and until Congress confers power upon it").

Plaintiffs counter that an *incorrect* legal conclusion cannot support agency action. Pls.' Br. in Supp. of Prelim. Injunction 18, ECF No. 6. This is surely true, but Plaintiffs are unlikely to establish that USCIS's conclusion regarding SIJS-DA's illegality was unreasonable. Indeed, there is a fundamental contradiction at the heart of Plaintiffs' argument. On the one hand, they argue that SIJS-DA is *not* "a non-enforcement policy exempt from [judicial] review" because it, like DACA, "confers access to affirmative immigration benefits." Pls.' PI Reply 7 (explaining why APA Section 701 does not foreclose judicial review). On the other hand, Plaintiffs contend that USCIS needed no express statutory authorization to create SIJS-DA because it was purely an exercise of the agency's "inherent prosecutorial discretion." Pls.' Br. in Supp. of Prelim. Injunction 16. SIJS-DA cannot be an exercise of

prosecutorial or enforcement discretion for the sake of one
argument and not for the other.[15]

As discussed above, we agree with Plaintiffs that
*Regents* controls on the question of APA reviewability. *See*
Section II.A.2, *supra*. But if SIJS-DA is "more than a non-
enforcement policy," 591 U.S. at 19, then it needs some sort of
statutory basis. *See Hikvision USA, Inc. v. FCC*, 97 F.4th 938,
944 (D.C. Cir. 2024) ("In the absence of statutory authorization
for its act, an agency's action is plainly contrary to law and
cannot stand."). Although the Supreme Court did not reach the
question of DACA's legality in *Regents*, the Fifth Circuit since
has, and it concluded — easily and persuasively — that the
program exceeded DHS's statutory authority. *Texas*, 50 F.4th at
524-28. Plaintiffs have offered no persuasive reason why SIJS-
DA should fare differently.

SIJS-DA is no more a creature of statute than DACA.
Plaintiffs argue that unlike DACA, SIJS-DA "furthers" an
existing statutory scheme by providing "a bridge from SIJ status
to LPR status while youth wait for a visa to become available."
Pls.' Suppl. Br. 16-17. But if Congress had intended SIJS
classification to confer lawful status, it could have passed a

---

[15] As noted above, Plaintiffs' briefing underscores this conundrum by
citing *Heckler v. Chaney* – the classic case regarding APA nonreviewability –
in support of their argument that SIJS-DA did not require statutory
authorization. Pls.' Br. in Supp. of Prelim. Injunction 25.

law saying so.  Instead, Congress permitted SIJS beneficiaries to apply for adjustment of status only "when an immigrant visa is immediately available."  Compl. ¶ 5.  Accordingly, Plaintiffs are unlikely to succeed on the merits of their claim that USCIS failed to articulate an adequate reason for rescinding SIJS-DA.

Because we conclude that SIJS-DA's questionable legality was likely reason enough for USCIS to seek to rescind the policy, the Court need not consider the agency's additional rationales.  *See BDPCS, Inc. v. FCC*, 351 F.3d 1177, 1183 (D.C. Cir. 2003) ("When an agency offers multiple grounds for a decision, we will affirm the agency so long as any one of the grounds is valid, unless it is demonstrated that the agency would not have acted on that basis if the alternative grounds were unavailable.").

> b.   USCIS's Failure to Consider Reliance
>      Interests and Reasonable Alternatives to
>      Rescission Likely Renders Its Decision
>      Arbitrary and Capricious

When rescinding a policy, an agency must consider both "serious reliance interests" engendered by that policy, *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009), and "reasonably obvious alternatives."  *Yale-New Haven Hosp. v. Leavitt*, 470 F.3d 71, 80 (2d Cir. 2006).  This is true even when the agency's basis for rescinding the policy is its illegality.  *Regents*, 591 U.S. at 30-33.  USCIS failed to consider reliance

interests and reasonably obvious alternatives here, likely rendering its decision to rescind SIJS-DA arbitrary and capricious.

The government offers two arguments for why USCIS was not required to consider reliance interests: (1) the requirement to consider reliance interests does not apply when an agency "credibly believes that the prior policy is a violation of the separation of powers doctrine," Gov't Suppl. Br. 6; and (2) the reliance interests here were not serious. Gov't PI Opp'n 25. Both arguments fall short.

*First*, an agency must always consider serious reliance interests, even when it concludes an earlier policy was unlawful. The government acknowledges that it "cannot find any binding caselaw" to support its contrary position. Gov't Suppl. Br. 6. This acknowledgment is not surprising, given that *Regents* rejected that position. There, the Court noted that "DACA was rescinded because of the Attorney General's illegality determination." 591 U.S. at 33. But "nothing about that determination foreclosed or even addressed the option[] of . . . accommodating particular reliance interests." *Id.* That DHS did not consider reliance interests in DACA before rescinding it rendered that decision arbitrary and capricious. *Id.*

The same is true here.  While USCIS may ultimately conclude that "reliance interests in benefits that it views as unlawful are entitled to no or diminished weight," *id.* at 32, it must still consider them.  And it failed to consider reliance on SIJA-DA.

*Second*, Plaintiffs have identified reliance interests that USCIS made no attempt to contend with.  Indeed, like the noncitizens in *Regents*, Plaintiffs aver that they have "enrolled in degree programs [and] embarked on careers" in reliance on the SIJS-DA program.  *Id.* at 31; *see also* Pls.' Mem. in Supp. of Prelim. Injunction 23-24 (collecting affidavits).  And just as in *Regents*, Plaintiffs note that the "consequences of the [deferred-action program] rescission . . . would radiate outward" to their families, schools, and employers.  591 U.S. at 31.[16]  Per Plaintiffs, even state governments would feel the effects of the rescission, because SIJS recipients would become "much more dependent on . . . child welfare agenc[ies], putting both a financial and administrative strain on the agencies." Mandelbaum Aff. ¶ 28.

---

[16] For example, absent deferred action and work authorization, Y.A.M. would not be able to support her three-year-old son.  Y.A.M. Aff. ¶ 20, ECF No. 9-8.  Employers would lose employees into whom they had invested time and money.  *Id.* ¶ 18; B.R.C. Aff. ¶¶ 9, 18, ECF No. 9-1; J.C.B. Decl. ¶ 10, ECF No. 9-4.  And schools would lose tuition-paying students.  B.R.C. Aff. ¶¶ 9, 18; Mandelbaum Aff. ¶ 25, ECF No. 9-21.

The government does not claim that it considered these — or any other — reliance interests. See Gov't PI Opp'n 24-25. It argues only that it did not have to. *Id.* In the government's view, any reliance interests were *per se* unreasonable because SIJS-DA had only existed for three years, was temporary, and was subject to a change in executive priorities. *Id.* Once more, *Regents* forecloses this argument. In that case, DACA was only five years old. 591 U.S. at 9. But the Court still held that the government's failure to consider the reliance interests engendered by that policy was arbitrary and capricious. *Id.* at 30. And it squarely rejected the argument that these interests were somehow illegitimate because DACA relief was, among other things, temporary and subject to discretionary revocation. *Id.* at 30-31.

Furthermore, the government points to no part of the administrative record to support its argument about petitioners' reliance interests. Nowhere in either of the USCIS memos does the agency say there are no serious reliance interests at stake. Indeed, the word "reliance" never appears in the two USCIS documents. And a court "cannot affirm based on a *post hoc* litigation rationalization pressed by agency counsel." *Gulf Restoration Network v. Haaland*, 47 F.4th 795, 804 (D.C. Cir. 2022); *cf. Regents*, 591 U.S. at 21 (courts should not consider an agency's *post hoc* rationalization for its decision). USCIS's

failure to consider serious reliance interests was likely
arbitrary and capricious.

USCIS's omission to consider *alternatives* to
rescinding the 2022 Policy Alert in its entirety was also likely
arbitrary and capricious under *Regents*.  Plaintiffs raised this
argument in their opening brief, Pls.' Br. in Supp. of Prelim.
Injunction 25, and the government failed to respond, meaning the
issue has likely been conceded.  *See Zhang v. Gonzales*, 426 F.3d
540, 541 n.1 (2d Cir. 2005).  For example, Plaintiffs question
why USCIS could not have addressed its security concerns by
"implementing supplemental vetting or screening procedures."
Pls.' Br. in Supp. of Prelim. Injunction 25.  This would not, of
course, resolve USCIS's concerns about SIJS-DA's legality, and
it may not be a viable alternative.  But if that is the case, it
was incumbent on the agency, under settled administrative law
principles, to consider this type of question.  The government's
argument *here* "does not establish that [USCIS] considered"
alternatives "or that such consideration was unnecessary."
*Regents*, 591 U.S. at 29.

"[I]n rescinding a prior action, an agency cannot
simply brand it illegal and move on."  *Louisiana v. U.S. Dep't
of Energy*, 90 F.4th 461, 475 (5th Cir. 2024).  Rather, it first
must consider reliance interests and alternatives.  *Id.*
(interpreting *Regents* to impose this requirement).  Because

USCIS failed to do so, its rescission of SIJS-DA was likely
arbitrary and capricious.

    2.    The SIJS-DA Rescission Likely Violated the APA's
            Notice-and-Comment Requirement

Plaintiffs argue that two elements of the SIJS-DA

rescission violated the notice-and-comment provisions of the

APA: 5 U.S.C. § 553(b)-(e).

The notice-and-comment provisions of the APA apply

only to legislative rules. *See* 5 U.S.C. § 553(b); *Time Warner*

*Cable Inc. v. FCC*, 729 F.3d 137, 168 (2d Cir. 2013). A

legislative rule is one that "grants rights, imposes

obligations, or produces other significant effects on private

interests." *Fisher v. Aetna Life Ins. Co.*, 32 F.4th 124, 141

(2d Cir. 2022). By contrast, an interpretive rule is an

agency's "intended course of action, its tentative view of the

meaning of a particular statutory term, or [an] internal house-

keeping measure[] organizing agency activities." *Id.*

Interpretive rules do not require notice and comment. *Time*

*Warner*, 729 F.3d at 168; *see also* 5 U.S.C. § 553(b)(4)(A).

Plaintiffs do not argue that the 2022 Policy Alert was

a legislative rule.[17] They therefore do not (and cannot) argue

that USCIS had to proceed through notice-and-comment before

---

[17] That Alert expressly disclaimed any such status. *See* 2022 Policy
Alert 4 ("USCIS will not publish Federal Register notices requesting public
comment because public notice is not required for internal policy
clarifications.").

rescinding the SIJS-DA program.  See *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101 (2015) ("Because an agency is not required to use notice-and-comment procedures to issue an initial interpretive rule, it is also not required to use those procedures when it amends or repeals that interpretive rule."). But Plaintiffs argue that the 2025 Policy Alert did more than just rescind the 2022 Policy Alert.  In their view, it also imposed two new policies that amounted to legislative rules, and therefore implicated the APA's notice-and-comment requirement. As to the first of these — halting consideration of SIJS recipients for deferred action — plaintiffs are not likely to succeed on the merits.  As to the second — stopping considering SIJS recipients for employment authorization — they are.

> a.  USCIS's Decision to Cease Considering SIJS
>     Recipients for Deferred Action on a Case-By-Case
>     Basis Did Not Require Notice and Comment

Plaintiffs challenge the announcement in the 2025 Policy Alert that USCIS would "no longer consider granting deferred action on a case-by-case basis to aliens classified as SIJs who are ineligible to apply for adjustment of status solely due to unavailable immigrant visas."  2025 Policy Alert 3.[18]  In

---

[18] Plaintiffs also challenge this policy as arbitrary and capricious. *See* Pls.' Br. in Supp. of Prelim. Injunction 26.  Since the Court concludes that USCIS's decision to stop automatically considering SIJS petitioners for deferred action was likely arbitrary and capricious, *see* Section II.B.1, *supra*, we need not decide at this stage whether it was arbitrary and capricious for USCIS to stop considering SIJS petitioners for deferred action at all.

their view, the 2025 Policy Alert does not just deny SIJS petitioners *automatic* consideration for deferred action. Depending on how one interprets the policy, it either bars SIJS recipients from seeking (1) deferred action based on their SIJ status, or (2) deferred action for any reason. *Compare* Gov't PI Opp'n 23-24 (stating that the first interpretation is correct), *with* Pls.' Br. in Supp. of Prelim. Injunction 27 (suggesting the second interpretation is "most consistent" with the text of the 2025 Policy Alert). Plaintiffs are unlikely to succeed on their notice-and-comment claim either way.

A policy or rule about who may be considered for deferred action is not legislative in nature. Deferred action is a creature of "administrative discretion," *Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471, 484 (1999), or "administrative convenience," 8 C.F.R. § 274a.12(c)(14), whereby the government "gives some [enforcement] cases lower priority." *Id.* It does not confer "individual rights and obligations." *Morton v. Ruiz*, 415 U.S. 199, 232 (1974); *see also, e.g.*, 2024 Policy Manual 5 ("Deferred action does not provide lawful status."); 8 C.F.R. § 236.21(c)(1) (Deferred action under the DACA program is a "temporary forbearance from removal [that] does not confer any right or entitlement to remain in or reenter

the United States.").[19]  The statement about who will be

considered for deferred action concerns an "intended course of

action," *see Fisher*, 32 F.4th at 141, and did not require the

notice-and-comment process.

> b.    USCIS's Decision to Stop Accepting Employment
>       Authorization Applications from SIJS Recipients
>       Who Have Received Deferred Action Was Subject to
>       Notice-and-Comment Requirements

Plaintiffs also challenge USCIS's announcement that it

will no longer accept employment-authorization applications from

SIJS recipients who have received deferred action.  2025 Policy

Alert 3.  Plaintiffs correctly point out (and the government

never disputes) that this pronouncement directly conflicts with

an existing federal regulation — one that permits *any noncitizen*

who has been granted deferred action to apply for work

authorization upon a showing of "economic necessity."  8 C.F.R.

§ 274a.12(c)(14); *see also Regents*, 591 U.S. at 10.  In essence,

the 2025 Policy Alert purports to amend — without notice-and-

comment rulemaking — a portion of a true legislative rule.  But

---

[19] At this first-blush stage of the case, deferred action appears to be even *more* a mere product of administrative discretion, convenience, or forbearance than other familiar exercises of prosecutorial discretion.  It is not clearly the basis of a contractual right, like a non-prosecution agreement entered into by a U.S. Attorney's Office.  *See generally United States v. Pelletier*, 898 F.2d 297, 301 (2d Cir. 1990).  And unlike the immunity conferred under 18 U.S.C. § 6002, it is not a creature of statute. No one would seriously suggest that changes in Department of Justice policy regarding non-prosecution or deferred prosecution agreements requires notice and comment.  Notwithstanding the meaningful differences between the criminal and regulatory arenas, it remains entirely unclear why the revision of a USCIS memorandum on the analogous subject *would* so require.

"[o]nce an agency issues a substantive rule through notice and comment, it can amend that rule only by following the same notice-and-comment procedures."  *Kisor v. Wilkie*, 588 U.S. 558, 608 (2019) (Gorsuch, J., concurring in the judgment) (citing *Perez*, 575 U.S. at 101).  Because the 2025 Policy Alert did not follow notice-and-comment procedures before amending a legislative rule, that aspect of it likely violated the APA.[20]

3.   The Government Likely Violated the *Accardi* Doctrine

Finally, Plaintiffs argue that the government's *sub silentio* departure from the SIJS-DA policy between April and June 2025 violated the *Accardi* doctrine.  Again, the government has never challenged this argument and therefore has likely conceded it.  *Zhang*, 426 F.3d at 541 n.1.  In any event, the claim is likely to succeed on the merits.

The *Accardi* doctrine states that "[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures," even when those procedures are "possibly more rigorous than otherwise would be required."  *Ruiz*, 415 U.S. at 235; *see also Vera Punin v. Garland*, 108 F.4th 114, 129 (2d Cir. 2024) ("Had the Attorney General promulgated

---

[20] The government represents in its opposition papers that it is still accepting work-authorization applications from SIJS recipients.  Gov't PI Opp'n 28.  But the 2025 Policy Alert plainly states that USCIS will *not* accept such applications.  2025 Policy Alert 3.  And when the text is clear, the Court cannot alter its review of the legality of an agency action based on "post-enactment practice."  *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 305 (2017).

rules delimiting his own authority, he could not later sidestep those limitations."). The doctrine's "ambit is not limited to rules attaining the status of formal regulations." *Montilla v. INS*, 926 F.2d 162, 167 (2d Cir. 1991). And it is particularly applicable where the procedure or regulation at issue affects "the rights or interests of the objecting party." *Id.*; *see also Lopez v. FAA*, 318 F.3d 242, 247 (D.C. Cir. 2003) (key question is whether the regulation in question establishes "procedural rules benefitting [a] party otherwise left unprotected" from unfettered agency discretion).

Here, the 2022 Policy Alert benefitted SIJS recipients by providing expressly that they would be "automatically" considered for deferred action. 2022 Policy Alert 3 (USCIS will "automatically conduct deferred action determinations for noncitizens with SIJ classification who cannot apply for adjustment of status solely because an immigrant visa number is not immediately available"); *see, e.g.*, *Damus v. Nielsen*, 313 F. Supp. 3d 317, 337 (D.D.C. 2018) (*Accardi* applied to ICE policy directive guaranteeing asylum applicants right to individualized review); *Torres v. U.S. Dep't of Homeland Sec.*, No. 17-CV-1840, 2017 WL 4340385, at *5-6 (S.D. Cal. Sep. 29, 2017) (*Accardi* applied to DACA Standard Operating Procedures). And Plaintiffs present evidence that USCIS ceased automatically considering SIJS recipients for deferred action in April 2025, or two months

before it promulgated the 2025 Policy Alert. *See, e.g.*, Wilkes
Aff. ¶¶ 11-12; McGrorty Aff. ¶¶ 9-11.[21]  Again, the government
has not challenged this evidence.

Thus, the government does not dispute that, for at
least a two-month period, it did not follow its own internal
procedures concerning deferred action for SIJS recipients.  In
other words, it does not dispute that it acted unlawfully.
*Ruiz*, 415 U.S. at 235; *cf. Fox Television, Inc.*, 556 U.S. at 515
("An agency may not . . . depart from a prior policy *sub
silentio* or simply disregard rules that are still on the
books.").  So, Plaintiffs are likely to prevail on the merits of
their *Accardi* claims.

## C.   **The Individual Plaintiffs Likely Face Irreparable Harm**[22]

To demonstrate irreparable harm, a plaintiff must show
that "absent a preliminary injunction they will suffer an injury
that is neither remote nor speculative, but actual and imminent,
and one that cannot be remedied if a court waits until the end
of trial to resolve the harm." *Grand River Enter. Six Nations,*

---

[21] One could argue (though the government does not) that just because
SIJS petitioners stopped receiving deferred action alongside their approval
notices, that does not mean USCIS was never going to consider them for
deferred action.  After all, the 2022 Policy Alert did not specify a timeline
on which deferred action need be considered.  However, USCIS's internal
policy manual provided that SIJS was a "particularly strong positive factor
that weigh[ed] heavily in favor of granting deferred action."  2024 Policy
Manual 5.  That USCIS stopped granting SIJS petitions and deferred action
simultaneously suggests it had stopped considering SIJS petitioners for
deferred action.  Therefore, USCIS was likely violating the *Accardi* doctrine.
[22] Again, we forgo addressing the question whether the Organizational
Plaintiffs are likely to suffer irreparable harm, given that it has no
bearing on the relief ordered herein.

*Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007).  The plaintiff

must also show that there is a "continuing harm which cannot be

adequately redressed by final relief on the merits and for which

money damages cannot provide adequate compensation." *Kamerling*

*v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (per curiam).

Here, the Individual Plaintiffs have shown a risk of irreparable

harm.

   The Individual Plaintiffs who received SIJS without

being considered for deferred action face a looming risk of

deportation.  Indeed, at least two Individual Plaintiffs are

*already* in removal proceedings.  *See* Compl. ¶¶ 97-98.  And even

those Individual Plaintiffs who are not currently in removal

proceedings face the imminent risk that such proceedings will be

commenced against them, as described in Section II.A.1, above.[23]

   The government's arguments to the contrary are

unavailing.  ***First***, the government argues that the Individual

Plaintiffs have not made a strong showing of irreparable harm

because "they had no entitlement to a favorable exercise of

discretion or a deferred-action process" and, in any case, have

not demonstrated that their detention or removal is imminent.

Gov't PI Opp'n 26-28.  The Court already addressed and rejected

---

[23] Even if the Individual Plaintiffs who are currently in removal
proceedings were the only plaintiffs able to establish irreparable harm, it
would make no difference.  The relief awarded here — a stay under the APA —
would be the same even if E.A.R. and C.V.R. were the only plaintiffs.

those arguments in the context of its standing inquiry.  *See*
Section II.A.1, *supra*.

 *Second*, the government argues that SIJS recipients can
still apply for deferred action using Form G-325A.  *Id.* at 27.
But that assertion remains hotly disputed.  *See* Pls.' PI Reply
13 (citing 90 Fed. Reg. 22752 (May 29, 2025)).

 *Third*, the government relies on *NAACP v. Trump*, 321 F.
Supp. 3d 143, 148-49 (D.D.C. 2018), in which the court said that
plaintiffs who never applied for DACA had not been irreparably
harmed by its rescission.  Gov't PI Opp'n 27.  But this case is
distinguishable.  Unlike in *NAACP*, the Individual Plaintiffs
here *have* effectively applied for SIJS-DA under the 2022 policy
(by submitting SIJS petitions at a time when doing so meant
being automatically considered for deferred action).  They face
the irreparable harm of removal because the government refuses
to consider those applications.

 The Individual Plaintiffs who previously received
deferred action have also alleged irreparable harm because they
will face detention and deportation once their deferred action
expires.  *See Velesaca v. Decker*, 458 F. Supp. 3d 224, 240-41
(S.D.N.Y. 2020) (collecting cases for the straightforward
proposition that "deprivation of [a noncitizen's] liberty is, in
and of itself, irreparable harm").  To be sure, the earliest
that any Individual Plaintiff's deferred action will expire is

May 2026, approximately six months from now.  *See* Compl. ¶¶ 20,
22.  And "[i]f a trial on the merits can be conducted before the
injury would occur there is no need for a preliminary
injunction."  11A *Wright & Miller's Federal Practice & Procedure*
§ 2948.1 (3d ed.); *see also Rodriguez ex rel. Rodriguez v.
DeBuono*, 175 F.3d 227, 235 (2d Cir. 1999) (no preliminary
injunction where injury would not occur for another eight
months).  Here, however, there is reason to believe that this
injury could occur before resolution of this case on the merits.
The Court has not yet received a full administrative record.
The parties have not submitted dispositive motions or proposed a
schedule for briefing them.  And the government has twice
requested that the Court adjourn briefing deadlines, suggesting
that future litigation may last longer than anticipated.
Moreover, the Court maintains a busy calendar of cases
previously scheduled to begin trial between now and May.
Accordingly, the Court concludes that the risk of irreparable
harm in six months is "sufficiently imminent to weight this
factor in favor of the [plaintiffs]."  *See Georgia v. Pruitt*,
326 F. Supp. 3d 1356, 1369 (S.D. Ga. 2018) (applying similar
logic to find irreparable injury despite a nineteen-month gap).

**D.   The Balance of Equities and Public Interest Favor Relief**

When the government is a party, the balance-of-
equities and public-interest factors merge.  *New York*, 969 F.3d

at 86.  As already discussed, Plaintiffs face considerable harm
if the SIJS-DA rescission is permitted to proceed.  On the other
side of the ledger, the government argues that an injunction
will hamper immigration enforcement efforts and undermine public
safety.  Gov't PI Opp'n 29-30.

The government's arguments are weighty, but in this
instance not as weighty as Plaintiffs' interests, combined with
the public interest in preventing unlawful agency action.  While
public safety is a legitimate concern, requiring USCIS to
*consider* SIJS recipients for deferred action does not prevent
USCIS from requesting additional biometric information or
ultimately declining to grant deferred action.  Moreover,
"[t]here is generally no public interest in the perpetuation of
unlawful agency action.  To the contrary, there is a substantial
public interest in having governmental agencies abide by the
federal laws that govern their existence and operations."
*League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12
(D.C. Cir. 2016).  The balance of equities therefore favors
relief.

## E.    Remedy

For the foregoing reasons, the SIJS-DA rescission will
be stayed pursuant to Section 705 of the APA.  The government
must therefore conduct deferred-action and employment-

authorization adjudications pursuant to the 2022 Policy Alert,[24] pending promulgation of a valid rescission policy or further order from this Court. *See* 5 U.S.C. § 705 (court may "postpone the effective date of an agency action" and / or act to "preserve status or rights pending conclusion" of review); *Haitian Evangelical Clergy Ass'n*, 789 F. Supp. 3d at 274 (stay under Section 705 restores "last peaceable uncontested status existing between the parties *before* the dispute developed").

Plaintiffs make four requests for injunctive relief that go beyond their request for a stay and eventual vacatur: (1) an injunction ordering USCIS to conduct deferred-action determinations for A.C.R., J.G.V., E.A.R., and C.V.R. within 30 days and for all members of the Deferred Action Class within 90 days; (2) an injunction ordering USCIS to conduct an employment-authorization determination for L.M.R. within thirty days and for all members of the EAD Subclass on a "timely" basis; (3) an order under the All Writs Act barring the government from removing the Individual Plaintiffs from the continental United States during the pendency of this litigation; and (4) an injunction barring government retaliation against the Individual Plaintiffs.

---

[24] For the avoidance of doubt, this order should not be read to suggest that USCIS remains bound by the 2024 Policy Manual or any prior *presumption* in favor of granting deferred action to SIJS recipients.

The Court declines to issue injunctions ordering USCIS to conduct deferred-action and employment-authorization determinations within specified timeframes.  As discussed above, an injunction ordering USCIS to conduct deferred-action determinations on *any* timeframe is barred under INA Section 1252(f) as to the putative classes.  *See* Section II.A.4, *supra*. And an injunction requiring USCIS to conduct employment-authorization determinations within a particular timeframe would exceed the scope of this Court's authority under the APA. "[T]he only agency action that can be compelled under the APA is action legally *required*."  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004).  While USCIS may be required to follow the 2022 Policy Alert unless and until it issues a proper rescission, nothing in that Alert or in the 2024 Policy Manual required USCIS to conduct deferred-action or employment-authorization determinations on a particular schedule.  Nor do Plaintiffs cite any other authority for the proposition that their requested timeframes are legally required.  Plaintiffs' request to impose specific deadlines on USCIS is therefore denied.

Next, Plaintiffs request an injunction under the All Writs Act prohibiting the government from removing the Individual Plaintiffs from the continental United States during the pendency of this litigation.  28 U.S.C. § 1651.  This

request is granted, at least until further order of this Court.
*See Ozturk v. Hyde*, 136 F.4th 382, 394-95 (2d Cir. 2025) (court
may issue order under All Writs Act to "protect its proceedings"
and to afford complete relief); *Du v. U.S. Dep't of Homeland
Sec.*, No. 25-CV-644, 2025 WL 1317944, at *1 (D. Conn. Apr. 24,
2025) (collecting cases staying individual removals pending
completion of litigation).

　　　　Finally, Plaintiffs' request for an injunction barring
government retaliation against the Individual Plaintiffs is
denied.  There is no evidence of any such retaliation in the
record.  And more importantly, the requested injunction amounts
to little more than a "command that the defendant obey the law."
*S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240 (2d
Cir. 2001).  Such injunctions are disfavored.  *Id.*; *see also
Rucano v. Venettozzi*, No. 18-CV-218, 2019 WL 1306073, at *3
(N.D.N.Y. Mar. 22, 2019) (denying request for general anti-
retaliation injunction as "no more than an obey-the-law
injunction that is not favored").

　　　　Plaintiffs' other requested injunctive relief — for
example, ordering USCIS to reinstitute a clear renewal process —
is largely superfluous given the APA stay.  And the Supreme
Court has cautioned against granting injunctions that would have
no "meaningful practical effect independent of . . . vacatur."
*Monsanto*, 561 U.S. at 165.  Nor is additional relief necessary

for A.C.R., J.G.V., E.A.R., C.V.R., whose SIJS petitions were subject to USCIS's *sub silentio* change in policy.  The 2022 Policy Memo does not specify a timeframe within which SIJS recipients must be considered for deferred action, so the automatic-consideration policy is still applicable to A.C.R., J.G.V., E.A.R., and C.V.R.

### III. Motion for Class Certification

Plaintiffs also move to certify two classes (and two subclasses) pursuant to Rule 23(b)(2).  Class certification is unnecessary for purposes of seeking a stay and eventual vacatur under APA Sections 705 and 706,[25] and the Court declines to grant preliminary class-wide injunctive relief for the reasons stated above.  Accordingly, the Court need not address the motion at this time.

### IV.  Conclusion

Plaintiffs' motion for a preliminary injunction is granted in part and denied in part.  The rescission of the 2022 Policy Alert is stayed pending further judicial review.  The government is also enjoined under the All Writs Act from removing the Individual Plaintiffs from the continental United States during the pendency of this litigation.  All further

---

[25] *Trump v. CASA* expressly left open the possibility that plaintiffs could obtain universal injunctive relief by seeking vacatur under the APA. 606 U.S. 831, 847 n.10 (2025); *see also id.* at 869 (Kavanaugh, J., concurring) (litigants can still seek nationwide relief under the APA).

preliminary injunctive relief is denied.  The Court reserves

judgment on Plaintiffs' motion for class certification, pending

further progress in this case.


      SO ORDERED.


                              /s/ Eric Komitee
                             ERIC KOMITEE
                             United States District Judge


Dated:      November 19, 2025
               Brooklyn, New York