UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

A.C.R. et al.,

                Plaintiffs,        **MEMORANDUM & ORDER**
                                        25-CV-3962 (EK)(TAM)
       -against-

KRISTI NOEM, Secretary, U.S.
Department of Homeland Security; et
al.,

                Defendants.

-------------------------------------x

ERIC KOMITEE, United States District Judge:

       This case concerns the plaintiffs' effort to overturn an administrative action taken in 2025 by United States Citizenship and Immigration Services ("USCIS"). Specifically, USCIS rescinded a policy the agency had announced in 2022, during a prior presidential administration, that conferred substantial benefits on young people with Special Immigrant Juvenile Status. *See generally* Compl., ECF No. 1. At the outset of this litigation, Plaintiffs sought an immediate stay, and eventual vacatur, of the 2025 rescission, as well as certain injunctive relief. Mot. for O.S.C. 2-4, ECF No. 5.[1]

       On November 19, the Court granted the plaintiffs relief under the Administrative Procedure Act, staying certain aspects of the 2025 rescission pending further judicial review

---

[1] Page numbers in citations to record documents other than briefs refer to ECF pagination.

(and granting, in certain minor aspects, additional injunctive relief). *See* Order on Mot. for Prelim. Inj. 48, ECF. No. 60. At the same time, the Court's order contained a footnote indicating that, while the stay would restore the effectiveness of the 2022 *Policy Alert* that the agency had publicly issued, the order should not be read to require USCIS to restore certain changes to its internal *Policy Manual*. *Id.* at 45 n.24; *see also* Apr. 18, 2025 Policy Manual (the "Prior Policy Manual"), ECF No. 9-26.[2]

The factual and procedural background are recited in the Court's prior order and need not be repeated here in detail. In brief: the 2022 Policy Manual changes went further than those contained in the Policy Alert itself. The Alert provided simply that Special Immigrant Juveniles ("SIJs") who were ineligible for adjustment to lawful-permanent-resident status due to visa unavailability would be considered for deferred action. *See generally* 2022 Policy Alert, ECF No. 1-1. The Alert said little

---

[2] The Court's November 19 order erroneously referred to this document as the 2024 Policy Manual, *see* ECF No. 60, at 6, by which it meant the version of the manual in place prior to the 2025 rescission of SIJS-DA. In actuality, the parties provided archived versions of the Policy Manual from May 2022 and April 2025. *Compare* ECF Nos. 68-1, and 68-2, *with* ECF No. 9-26. As between the May 2022 and April 2025 versions of the Policy Manual, the only difference is the April 2025 Policy Manual's deletion of a reference to a Biden-era ICE Directive. *See* Letter-Br. in Further Supp. of Mot. for Recons. ("Reply Letter-Br.") 1 n.2, ECF No. 71. That difference is irrelevant to the analysis in this Order. This Order refers principally to the April 2025 version of the Policy Manual, since that is the version the plaintiffs argue should be restored. *See id.* However, we cite the 2022 version of certain sections of the Policy Manual because that was the only version of those sections provided.

about the *substance* of that consideration — only that USCIS would endeavor "on a case-by-case basis to determine whether" deferred action was warranted. *Id.* at 3.

The Policy Manual changes went further, putting a heavy thumb on the scale in favor of deferred action. As amended, the 2022 Manual provided that:

> One particularly strong positive factor that weighs heavily in favor of granting deferred action is that the person [under consideration] has an approved Form I-360 and will be eligible to apply for adjustment of status as soon as an immigrant visa number becomes available. Additionally, the eligibility criteria for SIJ classification are generally strong positive factors in such a determination, including that a juvenile court determined that it was in the best interest of the SIJ not to be returned to the country of nationality or last habitual residence of the SIJ or the SIJ's parents.

ECF No. 68-1, at 5. As is common in agencies' internal policy manuals, however, USCIS's Policy Manual included (and continues to include) a disclaimer counseling against reliance: it stated that it did not "create any substantive or procedural right or benefit that is legally enforceable." May 2022 Policy Manual 2, ECF No. 68-2; *see also, e.g.*, U.S. Dep't of Just., Just. Manual § 1-1.000[3]; DHS Off. of Intel. & Analysis Pol'y Manual 5 (2025).[4]

On December 3, Plaintiffs moved for "clarification or reconsideration" — really, reconsideration — of footnote 24 of the November 19 order. Mem. of L. in Supp. of Pls.' Mot. for

---

[3] https://perma.cc/QJJ8-HZGJ.
[4] https://perma.cc/9SVF-AYKC.

Clarification or Recons. ("Recons. Mot."), ECF No. 61-1. Plaintiffs argue that USCIS must be required to follow the Prior Policy Manual in adjudicating SIJS-DA applications during the stay in order to restore the *status quo ante*. *Id.* at 1-2. The Court denied this motion on January 5, indicating that a reasoned opinion would follow. We set out the reasons why the motion for reconsideration must be denied below.

### I. Legal Standard

"A motion for reconsideration should be granted only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013).[5] "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Van Buskirk v. United Grp. of Cos.*, 935 F.3d 49, 54 (2d Cir. 2019); *see also* Local Civ. Rule 6.3 (requiring party moving for reconsideration to identify "the matters or controlling decisions which the moving party believes the court has overlooked").

---

[5] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

## II. Discussion

Plaintiffs fail to identify any controlling decisions or data that the Court overlooked. Their initial motion focused on the need to restore the SIJS-DA adjudication process to its form prior to the rescission in order to preserve the *status quo ante*. *See* Recons. Mot. 8. But Plaintiffs did little to explain why USCIS's changes to its internal Policy Manual — as opposed to its decision to rescind the SIJS-DA program entirely — violated the APA in the first place. The Court raised this question and, relatedly, the significance of the USCIS Policy Manual's disclaimer language, in a December 5 order. *See* ECF No. 65. Plaintiffs' response does not merit any change.

Courts have generally held that internal policy manuals like the one at issue here have no legal force. *See, e.g., Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) (SSA Claims Manual "has no legal force"); *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1153 (D.C. Cir. 2006) (DOJ guidelines "provide no enforceable rights"); *cf. Thevarajah v. McElroy*, No. 1-CV-3009, 2022 WL 923914, at *5 n.3 (E.D.N.Y. 2002) (INS memorandum was "an internal document and as such does not grant petitioner any rights"); *but see Morton v. Ruiz*, 415 U.S. 199, 235 (1974) (requiring Bureau of Indian Affairs to follow procedures in its own internal manual). The *Miller* court relied in large part on the "function [the DOJ guidelines] govern,"

*i.e.* "the exercise of prosecutorial discretion." *Miller*, 438 F.3d at 1153; *see also United States v. Cooks*, 589 F.3d 173, 184 (5th Cir. 2009) (collecting circuit decisions holding that the DOJ guidelines "do not create enforceable rights for criminal defendants").[6] So too here, the relevant USCIS guidelines govern the exercise of prosecutorial discretion and are therefore unlikely to create enforceable rights for SIJS petitioners.

These cases may appear, at first blush, to be in tension with the *Accardi* line of cases that Plaintiffs rely on in their reply letter-brief. *See, e.g.*, *Ruiz*, 415 U.S. at 235 ("[I]t is incumbent upon agencies to follow their own procedures . . . even where the internal procedures are possibly more rigorous than otherwise would be required."). However, *Accardi* is not directly applicable in this context.

The *Accardi* doctrine requires "agencies to follow their own procedures" where "the rights of individuals are affected." Reply Letter-Br. 2 (quoting *Montilla v. INS*, 926 F.2d 162, 167 (2d Cir. 1991)); *see generally United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). But the

---

[6] The DOJ has also regularly altered its internal guidance regarding corporate criminal enforcement. *See, e.g.*, Memorandum from the Deputy Att'y Gen. to All Component Heads & U.S. Att'ys re Bringing Criminal Charges Against Corporations (June 16, 1999); Memorandum from the Deputy Att'y Gen. to Heads of Dep't Components & U.S. Att's re Principles of Federal Prosecution of Business Organizations (Jan. 20, 2003); Memorandum from the Deputy Att'y Gen. to Heads of Dep't Components & U.S. Att's re Principles of Federal Prosecution of Business Organizations (Dec. 12, 2006). To the Court's knowledge, no court has ever suggested that those internal policy changes are governed by the change-in-position doctrine.

primary thrust of *Accardi* is that agencies cannot depart *sub silentio* from their operative policies, not that they can never *change* those policies. The cases Plaintiffs cite for the proposition that "a boilerplate disclaimer will not insulate the government from judicial review," Reply Letter-Br. 2, illustrate this point: all applied *Accardi* to invalidate a *sub silentio* departure from a still-current policy. *See Abdi v. Duke*, 280 F. Supp. 3d 373, 381 (W.D.N.Y. 2017); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 326 (D.D.C. 2018); *Aracely v. Nielsen*, 319 F. Supp. 3d 110, 120 (D.D.C. 2018). Here, by contrast, Plaintiffs agree that USCIS officially changed its SIJS-DA policy (and edited its policy manual accordingly) on June 6, 2025. Compl. ¶ 3.[7]

Moreover, even if the USCIS Policy Manual's disclaimer language is properly interpreted — as Plaintiffs suggest — to merely deny them a private right of action, their attempt to preserve the Prior Policy Manual would still fail under the APA. More relevant than *Accardi* here is the change-in-position

---

[7] Plaintiffs do contend, however, that USCIS ceased following the 2022 Policy Alert and the Prior Policy Manual *sub silentio* in April 2025. *See* Compl. ¶¶ 138-44. In our prior order, the Court found that USCIS had likely violated the *Accardi* doctrine as to the subset of SIJS recipients whose petitions were granted between April and June 2025. ECF No. 60, at 38-40. USCIS should consider that subclass of plaintiffs for deferred action pursuant to the Prior Policy Manual during the stay. *See Ruiz*, 415 U.S. at 235 ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."). We reach a different conclusion as to that period because it is controlled by *Accardi* itself rather than the change-in-position doctrine.

doctrine, which requires an agency revising a policy to show "awareness that it is changing position," offer "good reasons for the new policy," and explain the justifications for "disregarding facts and circumstances that underlay or were engendered by the prior policy." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221-22 (2016). But Plaintiffs cite no case — let alone a controlling case — in which a court has applied the *change-in-position doctrine* to revisions to an agency's internal policy manual, nor has the Court been able to identify such a case.[8]

Plaintiffs cite *Yale-New Haven Hospital v. Leavitt*, 470 F.3d 71 (2d Cir. 2006), as "upholding [the] vacatur of [a] Medicare policy manual provision adopted in violation of [the] change of position doctrine." Reply Letter-Br. 2. But that case involved a very different kind of manual: one issued to "fiscal intermediaries" who were contractually bound to follow it. *Leavitt*, 470 F.3d at 74, 80;[9] *see also Yale-New Haven Hosp., Inc. v. Thompson*, 162 F. Supp. 2d 54, 57-58 (D. Conn. 2001)

---

[8] The Supreme Court recently left open the question of whether the change-in-position doctrine applies to agency decisions that are not subject to notice and comment. *See Food & Drug Admin. v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 570 n.5 (2025); *but cf. Encino*, 579 U.S. at 222-23 (applying *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) to policy originally enshrined in opinion letter and field operations handbook but altered via notice-and-comment rulemaking).

[9] *Leavitt* noted that, by regulation, "fiscal intermediaries must only pay claims for services that are covered by Medicare, *see* 42 C.F.R. § 421.100(a); this responsibility includes the contractual obligation (to Medicare) to make coverage determinations in accordance with . . . less-formal agency instructions such as instructional manuals and intermediary letters." 470 F.3d at 73.

(same).  And the record here reveals no indication that the policy manual at issue in that case contained a disclaimer like that in the USCIS Policy Manual.  Because Plaintiffs have cited no binding case that contradicts this Court's prior order, their motion for reconsideration motion must be denied.  *Van Buskirk*, 935 F.3d at 54.

Finally, even if there are limits on an agency's ability to change its own internal manual, one of the most important considerations undergirding the change-in-position doctrine — reliance — is of limited applicability here.  As discussed, the USCIS Policy Manual expressly disclaimed the creation of "any substantive or procedural right or benefit that is legally enforceable."  *See* May 6, 2022 Policy Manual 2.  Therefore, Plaintiffs could not have reasonably relied on the procedures laid out in the Prior Policy Manual in the same manner that they may have relied on the SIJS-DA policy writ large.  While the government notes that the 2022 Policy Alert also stated that it contained "internal policy clarifications," Opp'n to Mot. for Recons. 5, ECF No. 68, that is not the same as a disclaimer expressly denying that a policy carries any legal weight.

### III. Conclusion

Plaintiffs' motion for reconsideration is denied.  During the pendency of this litigation, USCIS must abide by the

2022 Policy Alert.  Except as to the *Accardi* subclass, USCIS is not bound by those portions of the Prior Policy Manual that go further, including the requirement that adjudicating officers treat SIJ status as a "strong factor that weighs heavily in favor of granting deferred action."

      SO ORDERED.

          /s/ Eric Komitee
      ERIC KOMITEE
      United States District Judge

Dated:    January 14, 2025
         Brooklyn, New York